UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN R. BOYARSKI and
MARY ANN C. BOYARSKI,

        Plaintiffs,

        DECISION AND ORDER

        Case No. 17-CV-6282 FPG

v.

ANNA E. KARCZEWSKI,

        Defendant.

---

## INTRODUCTION

On August 31, 2014, Plaintiff John Boyarski and his wife were involved in a car accident with Defendant Anna Karczewski. On May 4, 2017, Plaintiff and his wife sued Defendant, alleging that she negligently rear-ended their vehicle and caused serious injuries to Plaintiff's neck, back, and right knee. ECF No. 1.[1] On August 31, 2018, Defendant filed a motion for summary judgment arguing that Plaintiff did not sustain a "serious injury" under New York State Insurance Law § 5101 *et seq.* (the "No-Fault Law") as a result of the accident. ECF No. 14. For the reasons stated below, Defendant's motion is GRANTED IN PART AND DENIED IN PART.

## APPLICABLE LAW

Under New York's No-Fault Law, "a plaintiff cannot recover for personal injuries arising from an automobile accident unless the plaintiff proves that he suffered a 'serious injury' as a

---

[1] Plaintiffs are Pennsylvania residents and Defendant is a New York resident. The accident occurred in New York. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. New York law governs. *See Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999) (federal courts sitting in diversity apply choice of law rules of the forum state); *Padula v. Lilam Properties Corp.*, 84 N.Y.2d 519, 521(1994) (in tort cases, such as the instant case, New York applies the law of the forum with the most at stake).

result of said accident." *Evans v. United States*, 978 F. Supp. 2d 148, 165 (E.D.N.Y. 2013). "[A] defendant may prevail on summary judgment by establishing that a plaintiff's injuries are not 'serious' . . . or by establishing that the plaintiff's injuries are not causally related to the relevant accident. There is no requirement that defendant establish both." *Heisler v. MPT N.Y., Inc.*, No. 02-CV-0351E(Sr), 2003 U.S. Dist. LEXIS 25084, at *19 n.28 (W.D.N.Y. Dec. 22, 2003) (citation and quotation marks omitted); *see also Rogers v. McLamb*, No. 04 Civ. 7043 (HBP), 2006 U.S. Dist. LEXIS 68631, at *9 n.2 (S.D.N.Y. Sep. 22, 2006).

**I.  Seriousness**

Section 5102(d) of the No-Fault Law lists nine categories of "serious injury." Plaintiff only claims injury under three of the categories:

(1) "permanent consequential limitation of use of a body organ or member,"

(2) "significant limitation of use of body function or system," and

(3) "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred and eighty days immediately following the occurrence of the injury or impairment" (the "90/180 category").

The first two categories, "permanent consequential limitation" and "significant limitation," are similar and often analyzed together. *See Roth v. 2810026 Can. Ltd.*, No. 13-CV-00901A(F), 2017 U.S. Dist. LEXIS 161267, at *63 (W.D.N.Y. Sep. 28, 2017). "Whether a limitation of use or function is 'significant' or 'consequential' (*i.e.*, important . . .) relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part." *Mercado v. Lee,* No. 04 Civ. 7166 (PGG), 2008 U.S. Dist. LEXIS 95059, at *5-6 (S.D.N.Y. Nov. 21, 2008) (quoting *Dufel v. Green*, 84

2

N.Y.2d 795, 798 (1995)). "There is no basis to find a 'consequential' or 'significant' limitation where the doctor has 'diagnosed only a mild injury, which plainly has not prevented plaintiff from continuing his daily activities.'" *Id.* (quoting *Dwyer v. Tracey*, 480 N.Y.S.2d 781, 783 (3d Dep't 1984)). In other words, a "minor, mild or slight limitation of use" is not sufficient. *Id.*

The third category, 90/180, requires a non-permanent injury to have resulted from the accident and "prevented a plaintiff from performing his usual activities to a great extent rather than some slight curtailment. . . . [A] plaintiff must present objective evidence of a medically determined injury or impairment of a non-permanent nature." *Roth*, 2017 U.S. Dist. LEXIS 161267, at *72 (internal citations and quotation marks omitted).

A defendant who moves for summary judgment on the "serious injury" issue "has the initial burden 'to make an evidentiary showing that the plaintiff has not sustained a serious injury as a matter of law.'" *Evans*, 978 F. Supp. 2d at 163 (quoting *Lawyer v. Albany*, 530 N.Y.S.2d 904, 906 (3d Dep't 1988)); *see also Yong Qin Luo v. Mikel*, 625 F.3d 772, 777 (2d Cir. 2010) ("A defendant must establish a prima facie case that plaintiff did not sustain a 'serious injury' within the meaning of Insurance Law § 5102(d).").

"Once the defendant has met [her] burden, the burden shifts to the plaintiff to 'overcome [the defendant's] motion by demonstrating that he sustained a serious injury.'" *Id.* (quoting *Gaddy v. Eyler*, 79 N.Y.2d 955, 957 (1992)). To do so, the plaintiff must provide objective proof of a serious injury; subjective complaints of pain are not enough. *Cole v. Allied Waste Indus.*, 496 F. Supp. 2d 257, 262 (S.D.N.Y. 2007). Objective proof may be stated quantitatively, such as a doctor's designation of a numeric percentage of a plaintiff's loss of motion, or qualitatively, such as a doctor's assessment of the plaintiff's limitations as compared to the "normal function, purpose

and use of the affected body organ, member, function or system." *Cole*, 496 F. Supp. 2d at 262 (quoting *Toure v. Avis Rent A Car Sys., Inc*., 98 N.Y.2d 345, 350 (2002)).

## II. Causation

"As with the question of whether a 'serious injury' occurred, Defendant bears the initial burden of making a prima facie case based on medical evidence that the injuries complained of are not causally linked to the accident in question." *Zhang v. Alvarado*, No. 15-CV-4373 (NGG) (JO), 2017 U.S. Dist. LEXIS 204218, at *23 (E.D.N.Y. Dec. 8, 2017). "If the Defendant meets this burden, the burden shifts to the Plaintiff to come forward with evidence addressing the defendant's claimed lack of causation." *Evans*, 978 F Supp. 2d at 164 (citations and internal quotation marks omitted).

## DISCUSSION

Here, Plaintiff claims that the accident caused serious injuries to his neck, back, and right knee. He claims to experience pain and stiffness in his neck and back, and pain in his right knee from a torn meniscus.

Defendant primarily argues that none of Plaintiff's injuries were caused by the accident. In support of her argument, Defendant submits the reports of Dr. Mary Turkiewicz, a diagnostic radiologist, and Dr. Michael Maloney, an orthopedic surgeon. Dr. Turkiewicz performed an image review of Plaintiff's x-ray and MRI records. Dr. Maloney performed an independent medical examination ("IME") of Plaintiff and reviewed his medical records, including his imaging records.

For the reasons discussed below, the Court finds that Defendant meets her burden of making a prima facie case that Plaintiff did not suffer a serious neck, back, or knee injury because of the accident, and that Plaintiff fails to overcome this showing as to his neck and back. However, Plaintiff presents sufficient evidence to raise a genuine issue of material fact as to whether he suffered a serious injury to his right knee as a result of the accident.

4

I.  **Whether Plaintiff Suffered a "Serious Injury" Under the "Permanent Consequential Limitation" and "Significant Limitation" Categories as a Result of the Accident**

   A. **Neck**

The defense diagnostic radiologist, Dr. Turkiewicz, reviewed the only imaging record of Plaintiff's neck: an x-ray taken on November 25, 2015, over a year after the accident.[2] Dr. Turkiewicz opined that the x-ray revealed "spondylotic change and degenerative disc disease in the cervical spine, coinciding with a pre-existing condition" but no fracture. ECF No. 14-5 at 2, 4; *see also* ECF No. 15-6 at 23.

The defense orthopedic surgeon, Dr. Maloney, performed an Independent Medical Examination ("IME") of Plaintiff, but his examination appears to have been focused on Plaintiff's right knee and did not mention his neck. Dr. Maloney also reviewed Plaintiff's imaging records and, like Dr. Turkiewicz, opined that the November 25, 2015 x-ray of his neck showed degenerative changes but no acute fracture or injury. ECF No. 14-7 at 5.

In addition to the reports of Drs. Turkiewicz and Maloney, Defendant points to evidence from Plaintiff himself to prove that he did not suffer a serious neck injury from the accident. Specifically, Defendant points out that, although Plaintiff reported neck pain to emergency personnel at the scene of the accident, ECF No. 14-4 at 11, he did not report neck pain when he visited the emergency room the following day. ECF No. 22-1 at 6. Plaintiff did report neck pain to a chiropractor, Dr. Ludwick, from the time he began treating with him in September 2014 through November 2014, ECF No. 24-1 at 3, 10, 12, 17, 19, 20, 23, 25, 28, 30, 32, 33, 34, 36, 38, 43, 45, but he did not characterize his neck pain as severe until December 2014. ECF Nos. 14-4 at 15; 42-1 at 48. Additionally, Plaintiff testified that, prior to the accident, he experienced arthritic

---

[2] An x-ray of Plaintiff's lumbar spine was taken the day after the accident, but no x-ray of his cervical spine was taken at that time. Dr. Turkiewicz noted that the November 15, 2015 x-ray of the cervical and lumbar spine showed degeneration similar to that reflected in the September 1, 2014 x-ray of the lumbar spine. ECF No. 14-5 at 3.

neck pain that he discussed with his primary care physician ("PCP") from time to time, but he never treated it except by using Aleve or Bengay. ECF No. 14-4 at 20. Plaintiff also treated with a chiropractor for neck and back pain for several years prior to the accident. ECF No. 24-1 at 3.

This evidence is sufficient to make a prima facie case that Plaintiff's neck pain was caused by degeneration rather than the accident. *See Alvarez v. E. Penn Mfg. Co.*, No. 10 Civ. 09541 (RKE), 2012 U.S. Dist. LEXIS 134093, at *31 (S.D.N.Y. Sep. 17, 2012) (holding that defendants made a prima facie case by presenting expert report concluding that plaintiff's injuries resulted from degenerative disease).

In response, Plaintiff primarily[3] offers evidence from his chiropractor, Dr. Ludwick. Although Dr. Ludwick treated Plaintiff for neck pain, his report does not explicitly conclude that it was caused by the accident. Rather, Dr. Ludwick's treatment notes indicate that Plaintiff reported to Dr. Ludwick that his pain was from the accident. ECF No. 24-1 at 4, 23, 24. Nothing in Dr. Ludwick's report addresses the defense doctors' theory that Plaintiff's neck pain was caused by degeneration. And while the presence of some degeneration prior to a car accident does not automatically "show that there is no causal link between the collision and an exacerbation of Plaintiff's condition," *Burzynski v. United States*, No. 13-CV-766S, 2016 U.S. Dist. LEXIS 149195, at *23 (W.D.N.Y. Oct. 25, 2016), Plaintiff must present evidence addressing the pre-existing injuries in order to overcome Defendant's prima facie case. *See Evans*, 978 F. Supp. 2d at172 (granting summary judgment for defendant where plaintiff's doctor opined that back injuries were caused by accident but failed to address preexisting injuries). Here, Plaintiff failed to do so.

---

[3] Plaintiff's PCP, Dr. Azizkhan, did not mention Plaintiff's neck in his report. Dr. Goltz, Plaintiff's orthopedic surgeon, noted that Plaintiff reported neck pain due to the accident, but he did not treat Plaintiff's neck, and Plaintiff testified that Dr. Goltz advised him that he was unable to say with a "degree of certainty as a professional" that the accident caused his neck pain. ECF No. 14-4 at 19-20 (Pl. Depo.).

Accordingly, the Court finds that Plaintiff has not submitted sufficient evidence to support his claim of a serious neck injury caused by the accident and therefore GRANTS summary judgment to Defendant as to Plaintiff's claimed neck injury.

**B. Back**

In his complaint, bill of particulars, and response in opposition to Defendant's motion for summary judgment, Plaintiff claims a serious injury to his back. However, certain evidence in the record indicates that Plaintiff does not consider his back pain to be part of his accident claim. Specifically, Dr. Maloney's report states that, during the IME, Plaintiff told him that his back pain was "not part of the motor vehicle accident claim" and that it was degenerative in nature. ECF No. 14-7 at 1 (Maloney Report). The report of Robert Ward, a doctor hired by Plaintiff's attorney to represent him during Dr. Maloney's IME, confirms that Plaintiff told Dr. Maloney that "the back is not being claimed as part of the auto accident because Dr. Goltz [Plaintiff's orthopedic surgeon] did not see [Plaintiff] when it was at its predominant point." ECF No. 18-1 at 9. Defendant's attorney pointed this out in his affidavit in support of the motion for summary judgment, ECF No. 14-1 at 7, but Plaintiff did not address it in his response.

The defense doctors reviewed three imaging records of Plaintiff's back. The first image was an x-ray taken on September 1, 2014, the day after the accident. Drs. Turkiewicz and Maloney both concluded that it showed only degenerative changes, not acute fracture or injuries. ECF Nos. 14-5 at 3; 14-7 at 5. The second back x-ray was taken on November 25, 2015. Drs. Turkiewicz and Maloney both opined that these images continued to show degeneration that was not significantly different from the September 2014 x-ray, and again, showed no acute factures or injuries. *Id.* The third and final x-ray of Plaintiff's back was taken on December 14, 2016. Again, Drs. Turkiewicz and Maloney concluded that these images showed only degenerative changes. *Id.*

7

Dr. Maloney further concluded that Plaintiff sustained a soft tissue lumbar strain in the accident that had resolved, and that the degenerative changes reflected on the x-rays were not connected to the accident. ECF No. 14-7 at 7. Similarly, Dr. Turkiewicz concluded that Plaintiff's back pain resulted from a preexisting condition of degenerative disc disease and spondylotic change. ECF No. 14-5 at 4.

Based on this evidence, Defendant meets her burden to make a prima facie case that Plaintiff did not sustain a serious back injury as a result of the accident. *See Sanchez v. Travelers Cos.*, 658 F. Supp. 2d 499, 511 (W.D.N.Y. 2009) ("Various cases have . . . held that sprains and strains are insufficient to establish serious injury.") (collecting cases). And although "a strain that aggravates a preexisting degenerative condition can qualify as a serious injury," *id.*, here, Plaintiff fails to offer sufficient objective evidence to show that this happened.

First, Plaintiff's orthopedic surgeon, Dr. Goltz, acknowledged that Plaintiff experienced "painful preexisting degeneration in his spine" before the accident. ECF No. 25 at 5. Dr. Goltz concluded that the accident significantly exacerbated this preexisting condition and, as evidence, he noted that after the accident, Plaintiff "tested positive on various orthopedic tests including the straight leg raise test and the Lasegue Maneuver" and received "steroid injections into the back in an attempt to improve pain and functioning." *Id.* He opined that Plaintiff's "range of motion and general back state has most likely not yet returned to his [pre-accident] baseline" and stated that Plaintiff's "back pain resulting from the [accident] caused him significant pain and was more than mild, minor, or slight." *Id.*

Dr. Goltz's statement that Plaintiff's back pain was "more than mild, minor, or slight" constitutes "mere parroting of language tailored to meet statutory requirements [and therefore] is insufficient." *DeJesus v. Rafael*, No. 00 Civ. 5137 (SWK), 2003 U.S. Dist. LEXIS 9488, at *7-8

(S.D.N.Y. June 4, 2003). Additionally, although Dr. Goltz indicated that Plaintiff tested positive on a straight leg raise test, the only positive result occurred on February 26, 2018, over three years after the accident. ECF No. 21-4 at 28. However, straight leg test results from 2015 and 2016 were negative. ECF No. 21-1 at 11, 20. Dr. Goltz also did not explain whether a positive straight leg raise test result could be consistent with a degenerative condition as well as an acute injury. He likewise failed to address the defense doctors' opinions that the x-rays of Plaintiff's back taken the day after the accident showed only degenerative changes and no acute injury. *See Evans*, 978 F. Supp. 2d at 172 (granting summary judgment where plaintiff's doctors failed to address a preexisting condition).

Second, plaintiff's PCP, Dr. Azizkhan, stated that Plaintiff sustained a traumatic injury to his back in the accident which was "significant, (*i.e.*, an injury that is more than mild, minor, or slight), and likely permanent." ECF No. 23 at 1. He explained that "[w]hen a person has no history of trauma to a particular body part and then is involved in a traumatic event, it is common sense that the traumatic event caused the injury." *Id*. He indicated that Plaintiff had never complained to him of back pain before the accident, thus the accident caused the injury. *Id*. at 2. Dr. Azizkhan further palpated an involuntary lumbar spasm, which he stated is an objective confirmation of injury. *Id*.

Dr. Azizkhan's conclusion that Plaintiff's back pain resulted from the accident is insufficiently supported. Dr. Azizkhan stated that "common sense" indicates that pain following a traumatic event caused the injury, but pain after the accident is consistent with Dr. Maloney's opinion that Plaintiff suffered a strain immediately after the accident which resolved and is not a "serious injury." *Sanchez*, 658 F. Supp. 2d at 511. Further, although Dr. Azizkhan said that Plaintiff never complained of back pain to him before, the record indicates that Plaintiff in fact

9

suffered from back pain before the accident which he treated with a chiropractor. ECF No. 14-4 at 20; ECF No. 24-1 at 3. Dr. Azizkhan's palpation of a spasm is also insufficient evidence of serious injury. While spasms may evince an injury, "[t]he New York Court of Appeals has held that observations of muscle spasms, absent evidence that the results were objectively ascertained, are insufficient to support a finding of serious injury." *LaSante v. Ackley*, No. 1:08-CV-0744 (LEK/DRH), 2010 U.S. Dist. LEXIS 90669, at *15 (N.D.N.Y. Sep. 1, 2010) (citing *Nitti v. Clerrico*, 98 N.Y.2d 345, 357 (2002)). Here, Dr. Azizkhan did not indicate whether or how he objectively observed the spasm and he did not explain whether a spasm indicates a serious traumatic injury or whether it could be consistent with a non-serious sprain. *See generally In re Joint E. & S. Dist. Asbestos Litig.*, 774 F. Supp. 113, 114 (S.D.N.Y. 1991) ("[T]he mere fact that [plaintiff's] experts might conceivably have offered further testimony in support of their conclusions is irrelevant: any such evidence should have been produced in response to the summary judgment motion. [Plaintiff's] failure to do so compels the conclusion that there was none.").

Third, Plaintiff's chiropractor, Dr. Ludwick, did not provide an explicit opinion on Plaintiff's back pain, and although his records indicate that Plaintiff's range of motion in has back was limited and that he was partially disabled as a result of his back pain, he did not specify whether his range of motion tests were objective and his disability designations were based on subjective questionnaires that Plaintiff answered. *See, e.g.,* ECF No. 24-1 at 2, 3, 7, 9, 23, 24, 26, 43, 44, 46; *Watson-Tobah v. Royal Moving & Storage, Inc.*, No. 13-cv-7483 (KBF), 2014 U.S. Dist. LEXIS 168842, at *29, 53 (S.D.N.Y. Dec. 5, 2014) ("To establish a significant limitation based on results of range-of-motion tests, a plaintiff must submit medical affidavits that both quantify the results of the tests and specify the objective tests that were performed.") (collecting

cases); *Cole*, 496 F. Supp. 2d at 262 (subjective complaints of pain insufficient to prove serious injury). And as with Plaintiff's neck pain, Dr. Ludwick did not explicitly conclude that it resulted from the accident but instead indicated that Plaintiff reported that his pain was from the accident. *Id.* at 4, 23, 24.

Accordingly, the Court finds that Plaintiff has failed to overcome Defendant's prima facie showing that he did not sustain a serious injury to his back as a result of the accident and therefore GRANTS summary judgment to Defendant as to Plaintiff's claimed back injury.

### C. Knee

Finally, Plaintiff claims that he sustained a serious injury to his right knee as a result of the accident. He had a torn meniscus and underwent arthroscopic surgery on September 2, 2015, just over a year after the accident.

In support of Defendant's motion for summary judgment, Dr. Maloney noted that Plaintiff did not complain of right knee pain immediately after the accident and was able to walk around for three to four hours immediately after the accident, which Dr. Maloney would not expect Plaintiff to be able to do if he had just torn his meniscus in the accident. ECF No. 14-7 at 5. Dr. Maloney further noted that meniscus tears can result from degeneration and Plaintiff's symptoms were more consistent with a tear resulting from degeneration rather than an acute tear sustained in a car accident, which would cause immediate pain. *Id.* Dr. Maloney noted that Plaintiff had reported to Dr. Ludwick that his right knee began hurting on September 14, 2014, after kneeling on it while gardening and doing exercises. *Id.* Dr. Maloney therefore concluded that Plaintiff's right knee pain and meniscus tear were not caused by the accident. *Id.*

Dr. Turkiewicz reviewed imaging records of Plaintiff's right knee noted that no images were taken until July 22, 2015, nearly a year after the accident, and it would therefore be very

difficult to relate the knee pain to the accident. She explained that the July 22, 2015 MRI did not reflect any swelling or bruising that would signify an acute injury. ECF No. 14-5 at 3. She did, however, note evidence of degenerative changes and opined that Plaintiff's meniscus tear could have been caused by degeneration rather than trauma. *Id*. at 4.

The Court finds that Defendant states a prima facie case that Plaintiff's knee injury was not caused by the accident. However, Plaintiff sufficiently overcomes Defendant's case and raises a genuine issue of material fact.

Plaintiff's orthopedic surgeon, Dr. Goltz, explicitly disagreed with the defense doctors' opinions and concluded that since Plaintiff did not experience any knee pain before the accident, the accident caused his knee injury. ECF No. 25 at 1-2. Dr. Goltz also indicated that as he operated on Plaintiff's knee, he observed a "shredded tear" of the meniscus which indicates severe pain not caused by degeneration; a degenerative tear would be subtler in its onset and produce gradual symptoms of pain. *Id*. at 2. Dr. Goltz agreed with the defense doctors that Plaintiff had degeneration in his knee but opined that the accident made him more susceptible to a traumatic injury and caused Plaintiff's asymptomatic knee degeneration to become symptomatic and painful. *Id.*

Dr. Goltz also rebutted the defense doctors' conclusions that the lack of bruising on the July 2015 MRI of Plaintiff's knee indicated a non-traumatic injury. Dr. Goltz explained that any bruising resulting from the accident would have healed by the time the July 2015 MRI was taken and so the lack of bruising on the MRI was irrelevant to the issue of causation. *Id.* at 3. He also opined that the MRI showed traumatic effusion, synovitis, edema, and other findings indicating that the tear was traumatic rather than degenerative. *Id.*

Dr. Goltz also addressed the issue of whether Plaintiff's gardening while kneeling could have caused the knee injury. He opined that it could not have, especially since Plaintiff was using a knee pad while gardening. *Id.* Dr. Goltz stated that it was extremely unlikely, if not physically impossible, that kneeling on a pad would have caused the meniscal tear. *Id*.

Finally, Dr. Goltz addressed Dr. Maloney's statement that if Plaintiff had sustained the meniscal tear during the accident, he would not have been able to walk around for three to four hours immediately afterward. Dr. Goltz opined that Plaintiff's back pain, which was more severe immediately after the accident, masked the knee pain. Once the back pain began to subside, the knee pain became more apparent. *Id.* at 3.

Plaintiff's PCP, Dr. Azizkhan, similarly opined that Plaintiff's meniscal tear was not caused by degeneration. He explained that a degenerative tear would cause gradual symptoms over time, in contrast to a traumatic tear which a patient would "feel." ECF No. 23 at 2. Since Plaintiff had not been complaining of knee pain at all before the accident and began to experience knee pain shortly after the accident, Dr. Azizkhan concluded that that accident caused the knee pain. *Id.* at 2. Like Dr. Goltz, Dr. Azizkhan agreed that Plaintiff had some knee degeneration before the accident, but the accident caused it to become symptomatic. *Id.* He also agreed with Dr. Goltz that gardening with a knee pad would not have caused Plaintiff's injury because kneeling while gardening does not create enough force to tear the meniscus. *Id.* Finally, also like Dr. Goltz, Dr. Azizkhan explained that Plaintiff's back pain likely initially masked the knee pain, which is why Plaintiff did not complain of it immediately after the accident. *Id.* at 3. He indicated that it is not unusual for a patient to not report pain immediately following a car accident. *Id.*

Plaintiff's evidence directly addresses and conflicts with Defendant's evidence and creates a triable issue of fact. Accordingly, the Court DENIES summary judgment on the issue of whether Plaintiff sustained a serious injury to his knee as a result of the car accident.

## II. Whether Plaintiff Suffered a "Serious Injury" Under the 90/180 Category as a Result of the Accident

As an initial matter, it is not clear if Plaintiff claims that his neck and knee injuries fall under the 90/180 category. In response to Defendant's motion for summary judgment, Plaintiff only argues that there is an issue of fact as to whether Plaintiff's back injury qualifies as a 90/180 injury. In any case, the Court finds that none of Plaintiff's claimed injuries qualify as serious under the 90/180 category.

As to Plaintiff's neck and back, Plaintiff has not offered sufficient evidence that his injuries prevented him "from performing his usual activities to a great extent rather than some slight curtailment." *Roth*, 2017 U.S. Dist. LEXIS 161267, at *72. At his deposition, Plaintiff, who is retired, testified that prior to the accident, his daily activities included housework, gardening, hunting, fishing, assisting his children with their households, and sometimes babysitting his grandchildren. ECF No. 14-4 at 3. Plaintiff argues that Dr. Ludwick's records establish that after the accident, he had trouble with activities like walking, sitting, sleeping, carrying, household chores, gardening, and bending and lifting. ECF No. 24-1 at 8. However, Dr. Ludwick's records are based on Plaintiff's subjective reports of pain during those activities, and his records indicate that all of those activities only "hurt a little," except for bending and lifting and walking and climbing stairs which "hurt very much." *Id.* at 8, 14. None of Plaintiff's injuries were reported as "almost unbearable" or "unbearable." *Id.* Moreover, neither Dr. Ludwick's records nor any other evidence establishes the extent to which Plaintiff's pain curtailed his ability to perform these

14

activities or how often any such curtailment occurred within the 180-day period following the accident.

Moreover, to the extent that Plaintiff's activities were significantly curtailed, most of Plaintiff's limitations appear to result from his knee injury rather than the neck or back. Specifically, Plaintiff testified that for about a year after the accident, he could not complete a one-mile walk each day because of his knee, and although he can now walk a mile if he is careful, he cannot kneel at daily mass, while gardening, or while washing the floor, and he cannot walk for more than a short while on concrete floors or hunt on uneven ground. ECF No. 14-4 at 20-21. However, because Plaintiff characterizes his knee injury as permanent, it does not fall under the 90/180 category. *See Martinez v. City of Buffalo*, 149 A.D.3d 1469, 1472 (4th Dep't 2017) (dismissing 90/180 claim because plaintiff's experts concluded that all the alleged injuries were permanent).

Accordingly, the Court GRANTS summary judgment to Defendant as to Plaintiff's claim that his injuries qualify as serious under the 90/180 category.

## CONCLUSION

For the reasons stated, Defendant's motion for summary judgment, ECF No. 14, is GRANTED IN PART AND DENIED IN PART.

Summary judgment is GRANTED to Defendant as to Plaintiff's claims that he suffered serious neck and back injuries as a result of the accident.

Summary judgment is DENIED as to Plaintiff's claim that he suffered a serious injury to his right knee as a result of the accident.

Summary judgment is GRANTED to Defendant as to Plaintiff's claim that his neck, back, and knee injuries qualify as serious under the 90/180 category. By separate order, the Court will set a status conference to set a date for trial.

IT IS SO ORDERED.

Dated: August 14, 2019
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court